666 S.E.2d 244

**In the Matter of Dale R. SAMUELS, Respondent.**

**No. 26536.**

Supreme Court of South Carolina.

Submitted July 14, 2008.
Decided Aug. 25, 2008.

Lesley M. Coggiola, Disciplinary Counsel, and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for Office of Disciplinary Counsel.

Dale R. Samuels, of Cumming, Georgia, pro se.

PER CURIAM.

Respondent and Disciplinary Counsel have entered into an agreement pursuant to Rule 21, RLDE, Rule 413, SCACR, in which respondent admits misconduct and agrees to accept an admonition up to a public reprimand. Respondent understands it is within our discretion to require him to pay the

complainant $1,100. We accept the agreement and issue a public reprimand. Respondent is further required to make a payment of $1,100, plus interest from June 15, 2004, to the complainant. The facts, as set forth in the agreement, are as follows.

## *Facts*

In 2003, respondent and his family resided in Florence County, South Carolina. Respondent planned to take employment in Georgia, and in preparation for selling their house in Florence, respondent and his wife, Jennifer Samuels, had a two-ton central air-conditioning system installed by Jerry's Heating, Air & Refrigeration, Inc. ("Jerry's") on June 24, 2003, for a price of $2,600.00. Respondent claimed that after the installation, Mrs. Samuels attempted to pay the technician immediately, but was told the company would send an invoice. Respondent further stated an invoice was subsequently sent, and Mrs. Samuels mailed the payment to Jerry's.

In the fall of 2003, there was a service problem with the air conditioner, and the technician who responded from Jerry's noticed there was no record of Jerry's receiving payment. Jerry's claimed it did not receive payment and sent Mrs. Samuels a series of letters seeking payment, all addressed to her at the residence in Florence. Respondent has not admitted to receiving these inquiries. Jerry's filed suit in the Florence Summary Court seeking payment, and the Summons and Complaint were personally served upon Mrs. Samuels on or about June 15, 2004, at the residence in Florence.

Respondent filed an Answer and Counterclaim, dated July 12, 2004. Although respondent was aware at the time the lawsuit was commenced that the check mailed to Jerry's for $2,600 never cleared the bank, respondent never tried to stop payment on the first check, issue a second check to Jerry's, or take other remedial action. In the Answer and Counterclaim, respondent asserted lack of personal jurisdiction on the basis Mrs. Samuels was a citizen and resident of Georgia. Respondent has acknowledged that while he believed at the time the technical jurisdiction claim was valid, he later knew the claim was not supported by the facts since at the time the transaction at issue took place, both respondent and Mrs. Samuels were living in Florence.

Respondent set forth the sequence of events regarding payment as described above in the Answer and Counterclaim, but did not disclose that his wife's check had never cleared the bank. Furthermore, respondent asserted Jerry's had recklessly inflicted severe emotional distress upon Mrs. Samuels. Respondent subsequently acknowledged there was no factual basis for this claim other than his contention that Jerry's had made no attempt to resolve the matter before filing suit. Respondent had no evidence of Mrs. Samuels seeking medical treatment or suffering medical damages as a result of being served with the lawsuit.

In his Answer and Counterclaim, respondent also contended Mrs. Samuels was forced to disclose the existence of the lawsuit to potential creditors, resulting in increased interest rate charges on money borrowed. Thereafter, respondent admitted his wife and he were in the process of purchasing a home in Georgia, and the actual mortgage application was made by him, and not his wife; he was not required, nor did he report, the existence of the lawsuit to any creditor; and there was no increase in interest rate charges as a result of the lawsuit. Respondent stated the disclosure of the existence of the suit was made to a mortgage broker and not the lender. Respondent acknowledged the Unfair Trade Practices claim was without factual basis.

When respondent and his wife moved to Georgia, they left a forwarding address with the Postal Service. Jerry's wrote Mrs. Samuels at the Florence address on July 22, 2004, referencing the Answer and Counterclaim, requesting proof of payment, and asking that she produce a copy of the check and mail or fax it to their office. Respondent never produced a canceled check for Jerry's, nor did he inform Jerry's that his wife's check had never cleared the bank.

Jessie Wall, an employee of Jerry's who prepared and filed the pleadings on behalf of Jerry's in this matter, and the complainant in this action, filed a formal request for production of documents on October 1, 2004, and a motion to compel discovery on November 19, 2004, with the Florence County Summary Court. Both documents sought proof of payment.

Respondent engaged in three instances of *ex parte* communication with the Florence County Magistrate assigned to the

case, Eugene Cooper. The first instance occurred on July 27, 2004, after respondent learned Mrs. Samuels was being held in default and a damages hearing had been scheduled. Respondent telephoned the Florence Summary Court and discussed with Judge Cooper his intent to file a motion to be relieved from default, and how his Answer and Counterclaim had not been received in a timely manner.

On a second occasion, on May 10, 2005, respondent telephoned the Florence Summary Court to discuss his lack of notice for the jury trial that was scheduled for that day. His call was transferred to Judge Cooper, who suggested to respondent that he contact Wall and explore possible settlement. Respondent telephoned Wall, disclosed to her he had spoken to Judge Cooper, and discussed possible settlement. The conversation broke down, with both parties making accusations. Respondent acknowledged that while Wall was not bound by any rules regarding courtesy and demeanor, he certainly was.

The third *ex parte* communication occurred shortly thereafter when respondent called Judge Cooper and reported to him that settlement discussions had been unsuccessful. Respondent discussed with Judge Cooper the removal of the matter from his docket because the amount in controversy would likely exceed the jurisdictional limit of the Summary Court. Subsequently, respondent faxed a First Amended Answer and Counterclaim to Judge Cooper, with a copy to Jerry's. Respondent's cover letter disclosed he had spoken to Judge Cooper, and the counterclaims contained in the document sought damages of not less than $7,500. The case was transferred to the Court of Common Pleas.

In the First Amended Answer and Counterclaim, respondent again raised the same issues involving jurisdiction, the method of payment to Jerry's, and the counterclaims for violation of the South Carolina Unfair Trade Practices Act, intentional infliction of emotional distress and outrage, defamation, and abuse of process. Respondent did not assert that his wife's check had not cleared. As with the initial Answer and Counterclaim, respondent later acknowledged there was no valid contention regarding jurisdiction; there was no factual basis for violation of the Unfair Trade Practices Act; and

there was no factual basis for the claim of intentional infliction of emotional distress upon Mrs. Samuels.

After the matter was transferred to the Court of Common Pleas, Jerry's retained counsel. The matter was subsequently resolved by a Consent Order transferring the case back to Summary Court, payment of $1,500 by respondent to Jerry's, and the execution of a Consent Order of Dismissal with prejudice, dated July 16, 2007.

In response to Wall's complaint to the Commission on Lawyer Conduct, respondent described the installation of the central air-conditioning system and the subsequent payment. At no point did respondent disclose his wife's check had never cleared the bank. Also, respondent acknowledged Wall's attempt to serve what respondent characterized as formal correspondence seeking proof of payment. In his response to the Commission's notice of full investigation, respondent acknowledged for the first time the check for payment had never cleared his bank. As a result of all of these actions, respondent received an air-conditioning system priced $2,600 for $1,500 and has not fully paid Jerry's for the appliance.

## *Law*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (a lawyer shall provide competent representation to a client); Rule 3.1 (a lawyer shall assert only meritorious claims and contentions); Rule 3.2 (a lawyer shall make reasonable efforts to expedite litigation); Rule 3.3 (a lawyer shall demonstrate candor toward the tribunal); Rule 3.4(a) (a lawyer shall not unlawfully obstruct another party's access to evidence); Rule 3.4(d) (a lawyer shall make a reasonably diligent effort to comply with a legally proper discovery request); Rule 4.1(a) (a lawyer shall not make false statements of material fact); and Rule 8.4(a) (professional misconduct).

Respondent's misconduct constitutes grounds for discipline under Rule 7(a)(1), 7(a)(5), and 7(a)(6) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR (it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct).

### *Conclusion*

We find that respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement for Discipline by Consent and publicly reprimand respondent for his actions. We further order respondent to make a payment of $1,100, plus interest from June 15, 2004, to complainant Jerry's.

**PUBLIC REPRIMAND.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.